**UNITED STATES of America,
Plaintiff,**

v.

**Jesse Lee VARDARO, Defendant.**

**Cause No. CR–08–04–BLG–RFC.**

United States District Court,
D. Montana,
Billings Division.

Sept. 5, 2008.

Marcia Hurd, U.S. Attorneys Office, Billings, MT, for Plaintiff.

## ORDER

RICHARD F. CEBULL, District Judge.

## I. INTRODUCTION

Defendant Jesse Lee Vardaro is charged by Indictment with Failure to Register as a Sex Offender, in violation of 18 U.S.C.

§ 2250(a). Defendant has filed a motion to dismiss the Indictment, asserting three grounds for dismissal: (1) Congress exceeded its powers under the Commerce Clause in enacting SORNA's registration requirements and making it a federal crime to fail to register; (2) Defendant's conviction would violate due process of law because Defendant was not notified of his obligation to register under SORNA; and (3) SORNA violates the Tenth Amendment because it requires state officials to accept federally-required sex offender registrations before any states choose to implement SORNA.

To date, the only Court of appeals to address Defendant's arguments is the Eighth Circuit. *See United States v. May*, 535 F.3d 912 (8th Cir.2008) (Holding that SORNA was not a violation of the ex post facto clause, did not violate due process, and did not violate the commerce clause.) The arguments have also been addressed and, for the most part, rejected by several district courts.

## II. FACTUAL BACKGROUND

On December 13, 1989, an indictment was filed in the State of Texas, charging Defendant with Indecency with a Child Younger than 17 Years, a Third–Degree Felony. On January 26, 1990, Defendant was placed on a probationary sentence of ten years. In 1998, Defendant's probation was revoked and he was sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice.

On September 15, 2004, Defendant moved from Texas to his mother's residence in Maybee, Michigan. Upon changing his residence, Defendant registered as a sexual offender in Michigan with the Monroe County Sheriff's Office.

Defendant was recently assigned to work on an oil exploration project in Glendive, Montana. By virtue of his conviction under a sex offense under the Texas Penal Code, it is alleged in the Indictment, that Defendant is a person required to register under the Sex Offender Registration and Notification Act, and he traveled in interstate commerce from Michigan to the Montana, and did knowingly fail to register and/or update a registration, in violation of 18 U.S.C. § 2250(a).

## III. BACKGROUND ON SORNA

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"). Title I of the Adam Walsh Act contains the Sex Offender Registration and Notification Act (SORNA). SORNA establishes a national sex offender registry for the purpose of "protect[ing] the public from sex offenders and offenders against children." 42 U.S.C. § 16901.

The Act defines the term "sex offender" as "an individual who was convicted of a sex offense." *Id.* § 16911(1). Sex offenses include, *inter alia*, criminal offenses that have an element involving a sexual act or sexual contact with another and certain specified offenses against minors. *Id.* § 16911(5)(A). SORNA further classifies all sex offenders into three different tiers based on the nature of their crime of conviction. *Id.* § 16911(2)-(4). A sex offender's classification determines the number of years after a conviction registration is required and how frequently verification of information in the registry is required. *Id.* §§ 16915–16916.

SORNA requires states to incorporate its standards for sex offender registration and notification into their own laws and maintain a sex offender registry that conforms to certain statutory requirements. *Id.* § 16912. Information from each state's registry is to be made available on the internet in a manner that will permit

the public to obtain relevant information for offenders within the state, and each state's website must be designed to allow it to integrate into and participate with the Attorney General's Dru Sjodin National Sex Offender Public Website. *Id.* §§ 16918, 16920. The Act also requires states to impose criminal penalties for a violation of its provisions. *Id.* § 16913 (requiring "criminal penalty that includes a maximum term of imprisonment that is greater than 1 year"). States that fail to implement SORNA's requirements within three years face a ten percent reduction in federal justice funding. *Id.* §§ 16924, 16925(d). To date, no state has fully complied with SORNA's requirements.[1]

SORNA specifies when a sex offender must initially register and sets forth the sex offender's continuing obligation to keep his registration current. *Id.* § 16913. The statute states, in relevant part:

(a) In general

A sex offender shall register, and keep registration current, in each jurisdiction where the offender resides, where the offender is employed, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register—

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section. 42 U.S.C. § 16913.

*Id.* § 16913.

Pursuant to section 16913(d), the Attorney General issued an interim rule on February 28, 2007. The rule provided, "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders con-

---

1. The Jacob Wetterling Act was in effect prior to the enactment of the Adam Walsh Act. The Jacob Wetterling Act provided federal funding to states that enacted sex offender registration laws commonly known as "Megan's Law." 42 U.S.C. § 14071, *et seq.* It also provided for criminal penalties of up to one year imprison- ment for sex offenders who failed to register in the state where they resided, worked, or were a student. *Id.* § 14072(i). Prior to the enactment of the Adam Walsh Act, all states had enacted some form of sex offender registration law.

victed of the offense for which registration is required prior to the enactment of the Act." 28 C.F.R. § 72.3 (2007).

SORNA also created a new federal offense for failing to register as a sex offender, with a maximum penalty of ten years imprisonment. 18 U.S.C. § 2250(a). The federal criminal statute provides:

Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

*Id.* § 2250(a).

## IV. ANALYSIS

### A. SORNA is a Valid Exercise of Congress' Commerce Clause Power.

Defendant's first contention in support of dismissal is that SORNA is not a valid exercise of Congress' Commerce Clause Power.

■ The Commerce Clause grants Congress the power "to regulate commerce with foreign Nations, and among the several states." U.S. Const. Art. I. § 8, cl. 3. The power to regulate commerce between the states includes the power to regulate: (1) "the use of channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." *United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Only a "rational basis" must exist for concluding that the activity legislated substantially affects interstate commerce. *Gonzales v. Raich,* 545 U.S. 1, 17, 22, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005).

■ Consistent with the overwhelming majority of district courts that have addressed the issue, I must also conclude that SORNA withstands a constitutional challenge under the second prong of the *Lopez* test because it regulates persons in interstate commerce. *See Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624; *United States v. Zuniga,* No. 07–3156, 2008 WL 2184118, at *17–19 (D.Neb. May 23, 2008); *United States v. Shenandoah,* 572 F.Supp.2d 566, 575, 2008 WL 3854454, at *4 (M.D.Pa. August 20, 2008); *United States v. Cochran,* No. 08–0018, 2008 WL 2185427, at *2 (E.D.Okla. May 23, 2008); *United States v. David,* No. 08–11, 2008 WL 2045830, at *8–9 (W.D.N.C. May 12, 2008); *United States v. Ditomasso,* 552 F.Supp.2d 233, 245–46 (D.R.I.2008); *United States v. Mason,* No. 07–0052, 2008 WL 1882255, at *2– 3 (M.D.Fla. Apr. 24, 2008); *United States v. Mason,* 510 F.Supp.2d 923, 931–32 (M.D.Fla. May 22, 2007); *United States v. Craft,* No. 07–3168, 2008 WL 1882904, at *8–11, 19–21 (D.Neb. Apr. 23, 2008); *United States v. Fuller,* No. 07–462, 2008 WL 2437869, at *8–10 (N.D.N.Y. June 13, 2008); *United States v. Howell,* No. 07– 2013, 2008 WL 313200, at *8 (N.D.Iowa Feb. 1, 2008); *United States v. Dixon,* No.

07–0072, 2007 WL 4553720, at *5 (N.D.Ind. Dec. 19, 2007); *United States v. Elliott,* No. 07–14059, 2007 WL 4365599, at *2–3 (S.D.Fla. Dec. 13, 2007); *United States v. Cardenas,* 2007 WL 4245913, *12 (S.D.Fla., Nov. 29, 2007); *United States v. Pitts,* No. 07–0157, 2007 WL 3353423, at *4–5 (M.D.La. Nov. 7, 2007); *United States v. Beasley,* No. 07–115, 2007 WL 3489999, at *9 (N.D.Ga. Oct. 10, 2007); *United States v. Gonzales,* 2007 WL 2298004, at *9 (N.D.Fla. Aug. 9, 2007); *United States v. Muzio,* No. 07–0179, 2007 WL 1629836, at *4 (E.D.Mo. June 4, 2007); *United States v. Hinen,* 487 F.Supp.2d 747, 757–58 (W.D.Va.2007); *United States v. Templeton,* 2007 WL 445481, at *4 (W.D.Okla. Feb. 7, 2007). (This list is not exhaustive).

### 1. Title 18 U.S.C. § 2250.

██ SORNA's criminal provision at 18 U.S.C. § 2250 contains an appropriate jurisdictional element which expressly limits SORNA prosecutions to those individuals who have traveled in interstate commerce. This Court agrees with the finding of *United States v. Shenandoah,* 572 F.Supp.2d at 575, 2008 WL 3854454, at *4 that such an express limitation evidences that Congress was acutely aware of the breadth of its power under the Commerce Clause when it enacted SORNA. *See David,* 2008 WL 2045830, at *8–9 (discussing Congress's "unmistakable awareness" of the limits of its power under the Commerce Clause); *Mason,* 510 F.Supp.2d at 931–32 (finding that SORNA satisfied the second prong because it contained "a jurisdictional nexus"); *Howell,* 2008 WL 313200, at *8 ("It is clear that Congress was aware of the limits of its power in its passage of SORNA because it specifically included the jurisdictional element of interstate travel."); *United States v. Adkins,* No. 07–0059, 2007 WL 4335457, at *6–7 (N.D.Ind. Dec. 7, 2007) ("Congress was aware of the limits of its power, however,

and included the jurisdictional element of interstate travel."); *see also Pitts,* 2007 WL 3353423, at *5–6; *Muzio,* 2007 WL 1629836, at *4. Because federal prosecution under § 2250 does not reach the purely intrastate movement of sex offenders who fail to comply with registration requirements, the Court finds that SORNA does not contravene the Commerce Clause. *Zuniga,* 2008 WL 2184118, at *17–19; *Craft,* 2008 WL 1882904, at *21; *Hinen,* 487 F.Supp.2d at 757–58.

██ This holding is bolstered by the Congressional intent underlying SORNA, i.e., to protect the public safety by creating a mechanism for tracking sex offenders as they move from state to state. Congress's authority "to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained and is no longer open to question." *See Caminetti v. United States,* 242 U.S. 470, 491, 37 S.Ct. 192, 61 L.Ed. 442 (1917) (cited with approval in *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624). As the Supreme Court has stated:

> Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin. In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce.

*Brooks v. United States,* 267 U.S. 432, 436–37, 45 S.Ct. 345, 69 L.Ed. 699 (1925). The threat posed by sex offenders traveling in interstate commerce is precisely the type of peril that Congress may address utilizing the Commerce Clause. *See David,* 2008 WL 2045830, at *8–9 ("There can be no question that the interstate tracking of convicted sex offenders as they

migrate around the country is a matter well within the scope of Congress's power.").

Title 18 U.S.C. § 2250 is not unconstitutional.

## 2. Title 42 U.S.C. § 16913.

■■■■ At least two district courts have held that SORNA's registration provision at 42 U.S.C. § 16913 is not authorized by the Commerce Clause. *See United States v. Waybright,* 561 F.Supp.2d 1154, 1156–57, 1160–68 (D.Mont.2008); *United States v. Powers,* 544 F.Supp.2d 1331, 1333–36 (M.D.Fla.2008). These decisions include a separate analysis of SORNA's registration provision, and this Court rejects that approach. Both provisions of 42 U.S.C. § 16913 and 18 U.S.C. § 2250 "are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty." *Shenandoah,* 572 F.Supp.2d at 577, 2008 WL 3854454, at *5; *Fuller,* No. 07–462, Doc. 24 at 10. Also, this Court is persuaded by a number of other district courts that 42 U.S.C. § 16913 and 18 U.S.C. § 2250 should be treated "as interrelated components of the larger whole of SORNA sufficient to overcome any deficiencies when viewing § 16913 in isolation." *United States v. Hann,* 574 F.Supp.2d 827, 2008 WL 4067542 (M.D.Tenn. August 22, 2008); *United States v. Van Buren,* No. 3:08–CR–198, 2008 WL 3414012 at *12 (N.D.N.Y. 2008); *United States v. Trent,* 568 F.Supp.2d 857, 864, 2008 WL 2897089, *5 (S.D.Ohio 2008) (holding that because the defendant had traveled in interstate commerce, § 16913(a) could validly be applied to him); *United States v. Ditomasso,* 552 F.Supp.2d 233, 245–46 (D.R.I.2008). When considering SORNA as a whole, it is abundantly clear that the Act does not punish sex offenders for the *intrastate* failure to register. *Shenandoah,* 572 F.Supp.2d at 577, 2008 WL 3854454, at *5. A person who has never traveled can never be a federal felon under SORNA. The federal government gains criminal jurisdiction only when a person required to register under SORNA travels in *interstate* commerce. *Hinen,* 487 F.Supp.2d at 757–58; *Fuller,* No. 07–462, Doc. 24 at 10.

■■■■ Additionally, were the court to parse SORNA as was done in *United States v. Waybright,* 561 F.Supp.2d 1154, 1156–57, 1160–68 (D.Mont.2008), the registration provision would be authorized by the Necessary and Proper Clause, which grants Congress the power to "make all Laws which shall be necessary and proper" for executing its other enumerated powers. *Shenandoah,* 572 F.Supp.2d at 577, 2008 WL 3854454, at *5; U.S. Const. art. I, § 8, cl. 18. In conjunction with the Commerce Clause, the Necessary and Proper Clause permits Congress to "regulate even those intrastate activities that do not themselves substantially affect interstate commerce," so long as the Congressional enactment is "necessary to make a regulation of interstate commerce effective." *Shenandoah,* 572 F.Supp.2d at 577, 2008 WL 3854454, at *5, citing *Gonzales,* 545 U.S. at 35, 125 S.Ct. 2195 (Scalia, J., concurring); *see also United States v. Thomas,* 534 F.Supp.2d 912, 921 (N.D.Iowa 2008).

■■■■ To satisfy the Necessary and Proper Clause, the means chosen need not be "narrowly tailored or absolutely necessary" to attain the desired end, but must be "reasonably adapted" thereto. *Shenandoah,* 572 F.Supp.2d at 577, 2008 WL 3854454, at *5, citing *Thomas,* 534 F.Supp.2d at 921–22. SORNA's registration provision is reasonably adapted to meet the Congressional purpose of monitoring sex offenders who transgress state

lines and is authorized by the Necessary and Proper Clause.

Title 42 U.S.C. § 16913 is not unconstitutional.

### 3. Facial/Overbreadth Challenge.

The Court must also consider whether Defendant is making a facial challenge. Facial challenges arise most often when a party claims a deprivation of a constitutionally protected liberty. *See Wash. State Grange v. Wash. State Republican Party*, — U.S. ——, 128 S.Ct. 1184, 1187, 170 L.Ed.2d 151 (2008) (examining facial validity of election law with respect to First Amendment); *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (holding that Bail Reform Act provision was not facially invalid under Fifth or Eight Amendments). "[F]acial challenges are best when infrequent," and are not the preferred means for challenging Congress's power to enact a statute. *Sabri v. United States*, 541 U.S. 600, 608–10, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (rejecting "facial" challenge to Congress's power to enact criminal bribery statute and characterizing constitutional claim as "an overbreadth challenge").

A party mounting a facial challenge to a statute, such as in this case, faces the difficult burden of establishing "that no set of circumstances exists under which the [a]ct would be valid." *United States v. Trent*, 568 F.Supp.2d 857, 864, 2008 WL 2897089, *5 (S.D.Ohio 2008), citing *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095. Other federal courts have held that *Salerno* must be applied, when ruling on facial challenges to the constitutionality of a federal statute under the Commerce Clause.[2] *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1077–78 (D.C.Cir.2003),

*cert. denied*, 540 U.S. 1218, 124 S.Ct. 1506, 158 L.Ed.2d 153 (2004); *United States v. Sage*, 92 F.3d 101, 106 (2d Cir.1996). Vardaro has not established that no set of circumstances exists under which § 16913(a) would be valid under the Commerce Clause. Based upon this Court's above reasoning, rejecting Vardaro's Commerce Clause challenge to § 2250(a), this Court must conclude that § 16913(a) can be validly applied to him, given that Vardaro is alleged to have traveled in interstate commerce. *Trent*, 568 F.Supp.2d at 864, 2008 WL 2897089, at *5.

The Supreme Court has been fairly specific in listing the areas where facial/overbreadth challenges are permitted:

Facial challenges of this sort are especially to be discouraged. Not only do they invite judgments on fact-poor records, but they entail a further departure from the norms of adjudication in federal courts: overbreadth challenges call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand. See, *e.g., Chicago v. Morales*, 527 U.S. 41, 55–56, n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion). Accordingly, we have recognized the validity of facial attacks alleging overbreadth (though not necessarily using that term) in relatively few settings, and, generally, on the strength of specific reasons weighty enough to overcome our well-founded reticence. See, *e.g., Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (free speech); *Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964) (right to travel); *Stenberg v. Carhart*, 530 U.S. 914, 938–946, 120 S.Ct. 2597,

---

**2.** *United States v. Waybright*, 561 F.Supp.2d 1154 (D.Mont.2008) fails to discuss *United*

*States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

147 L.Ed.2d 743 (2000) (abortion); *City of Boerne v. Flores,* 521 U.S. 507, 532–535, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (legislation under § 5 of the Fourteenth Amendment). *See generally* Fallon, *As–Applied and Facial Challenges and Third–Party Standing,* 113 Harv. L.Rev. 1321, 1351 (2000) (emphasizing role of various doctrinal tests in determining viability of facial attack); Monaghan, *Overbreadth,* 1981 S.Ct. Rev. 1, 24 (observing that overbreadth is a function of substantive First Amendment law). *Outside these limited settings, and absent a good reason, we do not extend an invitation to bring overbreadth claims.* (Emphasis added.) *Sabri,* 541 U.S. at 609–610, 124 S.Ct. 1941. Commerce Clause overbreadth challenges did not make the list of recognized exceptions.

According to *Waybright,* notwithstanding what *Sabri* says, "the [Supreme] Court has in fact carved out an exception in these types of cases." *Waybright,* 561 F.Supp.2d at 1168 n. 8. *Waybright* says that *Lopez* carved an exception because *Waybright* speculates that it was "likely true" that the firearm in *Lopez* had traveled in interstate commerce, but since the Court permitted the challenge anyhow, it must have been striking down the statute on overbreadth grounds: i.e., because the statute could be applied even if the firearm had not traveled in interstate commerce.

■ That reading of *Lopez* contravenes an important rule for interpreting Supreme Court decisions, is inconsistent with *Lopez* and with the Ninth Circuit's application of *Lopez.* As an initial matter, "[c]onstitutional rights are not defined by inferences from opinions which did not address the question at issue." *Texas v. Cobb,* 532 U.S. 162, 169, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). That is exactly what *Waybright* was doing. *Waybright* incorrectly assumes that *Lopez* must have

created a new exception for overbreadth challenges because, through *Lopez* never mentions "overbreadth" or "facial" challenge, the gun there must have traveled in interstate commerce, and had *Lopez* only been an as-applied challenge, the Court would have upheld the statute.

■ The best reading of *Lopez,* and the reading that the Ninth Circuit has applied is that the "fatal flaw" in *Lopez* was actually the absence of a "jurisdictional element." *See United States v. Cummings,* 281 F.3d 1046, 1051 (9th Cir.2002); *see also United States v. Cortes,* 299 F.3d 1030, 1033 n. 1 (9th Cir.2002); *United States v. Jones,* 231 F.3d 508, 514 (9th Cir.2000).

There is no reason to think *Lopez* was an overbreadth challenge. The Supreme Court could have saved the statute by holding that, so long as there is proof at trial of interstate travel, everything is fine. The essential holding of *Lopez,* at the very least, is that when Congress is legislating at the outer boundary of the Commerce Clause authority, it must place a "jurisdictional element" in the statute. When Congress reenacted the Gun Free School Zones Act with a "jurisdictional element," the Ninth Circuit upheld it. *See United States v. Dorsey,* 418 F.3d 1038 (9th Cir. 2005).

Defendant's facial challenge fails.

## B. SORNA Does Not Violate Due Process.

Defendant also argues that he had no notice of SORNA's reporting requirements, and thus cannot be prosecuted for violating Section 2250(a). He claims a lack of notice violates due process and requires dismissal of this case. Defendant relies on *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

In *Lambert,* the Supreme Court found a felon registration ordinance carrying criminal penalties was unconstitutional as ap-

plied to defendant who had no knowledge of duty to register. The Lambert Court focused heavily on notice and the necessity of notice in order to satisfy due process. "Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act." *Id.* at 228, 78 S.Ct. 240. The Lambert Court determined a conviction based on wholly passive conduct where the defendant is unaware of any wrongdoing violates due process. *Id.* The Court also noted the lack of circumstances which might have moved the defendant to inquire as to the necessity of registration. *Id.*

This case is distinguishable from *Lambert* because Defendant cannot claim he was unaware of any wrongdoing. Defendant was aware of his continuing obligation to register, as he had registered in Michigan prior to traveling to Montana. Defendant may not have had notice of his registration requirements under SORNA, but he knew of his obligation to keep his registration current. Defendant cannot claim he was unaware of any wrongdoing.

## C. SORNA Does Not Violate the Tenth Amendment

Defendant's final contention in support of dismissal is that SORNA's registration requirements violate the Tenth Amendment to the U.S. Constitution, which provides, "powers not delegated to the United states by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. The Tenth Amendment has been applied to uphold the principles of federalism by limiting the power the federal government may exercise over state activities. *See Printz v. United States,* 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (Tenth Amendment prohibits the federal government from commandeering state officials into enacting or administering federal law).

SORNA offers financial incentives to states to create SORNA compliant registries. 42 U.S.C. §§ 16924, 16925(d). Defendant argues that no state has implemented the SORNA requirements and the federal government is forcing state officials who run the registries to accept federally required sex offender registrations before their state chooses to adopt the SORNA provisions voluntarily.

This Court adopts the reasoning set forth in *United States v. Waybright,* 561 F.Supp.2d at 1168–69, wherein the Court found that *Waybright* did not have standing to assert this claim. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (requiring a causal connection between the injury and the conduct complained of to assert standing).

Under Montana law, a person must register as a sex offender if that person has been convicted of a crime in another state that requires registration. Mont.Code Ann. §§ 46–23–502(9)–(10), 46–23–504(1)(c). Defendant was required to register as a sex offender in Michigan, therefore, he was also required to register as a sex offender under Montana law, upon moving to Montana. SORNA did not require state officials who run the Montana sex offender registry to do anything they were not already required to do under Montana law. *See Waybright,* 561 F.Supp.2d at 1168–69. Defendant does not have a valid Tenth Amendment claim.

## V. CONCLUSION

Based upon the foregoing, Defendant's Motion to Dismiss is **DENIED**.