[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12176

_____

D. C. Docket No. 06-00202-CR-ORL-18-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILFREDO G. MADERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 23, 2008)

Before BARKETT, FAY and STAPLETON,* Circuit Judges.

PER CURIAM:

_____
* Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

Wilfredo G. Madera ("Madera") appeals from the district court's denial of his motion to dismiss the indictment against him for failing to register as a sex offender in violation of 18 U.S.C. § 2250(a) and the Adam Walsh Child Protection and Safety Act of 2006 ("Walsh Act"). On appeal, Madera argues that the Walsh Act is unconstitutional because it violates the following provisions of the United States Constitution: 1) the Non-Delegation Doctrine, Art. I, § 1; 2) the *ex post facto* clause, Art. I, § 9, cl. 3; 3) both the procedural and substantive due process clauses of the Fifth Amendment; and 4) the Commerce Clause, Art. I, § 8, cl. 3. The district court denied Madera's motion to dismiss, holding as a matter of law that the Walsh Act was both retroactive and constitutional. We reverse.

**Factual Background**

Madera was convicted in New York in November 2005 of sexual abuse in the second degree, a misdemeanor under New York Penal Code § 130.60. He was sentenced to six years of probation for this conviction, but was not incarcerated. Madera signed a sexual offender registration form in New York, dated May 1, 2006, which stated, "If you move to another state you must register as a sex offender within 10 days of establishing residence."

Madera subsequently moved to Florida, and was issued a driver's license on June 1, 2006 with an address in West Palm Beach, Florida. He was arrested on

2

October 23, 2006 for failure to register as a sex offender in violation of 18 U.S.C. § 2250, and was thereafter indicted by a grand jury for "knowingly and unlawfully fail[ing] to register and update a registration as required by [the Walsh Act]."

After the district court denied Madera's motion to dismiss, Madera entered a conditional plea of guilty to the failure to register charge, permitting him to appeal that motion. The district court then sentenced Madera to time served, four years of probation, and a $500 fine. As of March 8, 2007, Madera has been registered with the State of Florida Sexual Offender Registration database. This appeal followed.

**Standard of Review**

Generally, we review a district court's denial of a motion to dismiss for an abuse of discretion. See United States v. Noriega, 117 F.3d 1206, 1211 (11th Cir. 1997). To the extent that the district court's determination rests on the district court's resolution of questions of law, however, we must review those questions of law de novo. Id.[1]

**Discussion**

The Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-

---

[1] The Government suggests that several of Madera's arguments should be reviewed for clear error because they were not raised before the district court. Madera's arguments, however, are all presented to support claims properly preserved before the district court. Thus, they too will be reviewed de novo insofar as they turn on questions of law. See Yee v. Escondido, 503 U.S. 519, 532 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").

3

248, was enacted on July 26, 2007. Title I of the Act, entitled the Sex Offender Registration and Notification Act ("SORNA"), creates a national sex offender registry law. In addition to defining the term "sex offender" and addressing the various tiers of sex offender status, 42 U.S.C. § 16911, SORNA also requires every jurisdiction to maintain a sex offender registry conforming to the requirements of SORNA. 42 U.S.C. § 16912. At a minimum, SORNA requires sex offenders to provide information disclosing their name and aliases, Social Security number, residence, place of employment and/or school, and vehicle information. 42 U.S.C. § 16914(a)(1)–(7). Every jurisdiction must also include in the sex offender registry the sex offender's physical description, criminal history, current photographs, fingerprints and palm prints, DNA sample, and a photocopy of a driver's license or identification card. 42 U.S.C. § 16914(b)(1)–(8). Certain information about the sex offender (exempting items such as Social Security numbers) is also mandated to be published on a jurisdictional website, and each jurisdiction's website must contain full field search capabilities for participation in the National Sex Offender Public Website which is maintained by the Attorney General. See 42 U.S.C. §§ 16918, 16920.

Most pertinent to this case, SORNA also delineates how and when a sex offender should register under the Act. In general, sex offenders are required to

register in each jurisdiction where the sex offender resides within three days of being sentenced, unless they are sentenced to a term of imprisonment for the sex offense, in which case they must register before completing their sentence. 42 U.S.C. § 16913(a)–(b).[1] If a sex offender has a change in name, residence,

---

[1] The registry requirements for sex offenders under 42 U.S.C. § 16913 are as follows:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to

5

employment, or student status, the sex offender must update their registration within three days. 42 U.S.C. § 16913(c). SORNA creates a new federal crime for those individuals who fail to register, or to keep their registration current, despite being required to do so by subjecting the sex offender to fines or imprisonment up to ten years, or both. 18 U.S.C. § 2250(a).[2] On appeal, Madera challenges the district court's ruling that SORNA is retroactive from its date of enactment and the

---

comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

[2] In relevant part, 18 U.S.C. § 2250 provides as follows:

(a) In general.--Whoever--

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)    (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

6

court's rejection of his arguments that SORNA is unconstitutional. We first consider SORNA's retroactivity.

Congress vested the Attorney General with "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006." 42 U.S.C. § 16913(d). The Attorney General exercised that authority by issuing an interim rule on February 28, 2007, stating that SORNA was to apply retroactively to anyone convicted of a sex offense, regardless of when that offense took place. See 28 C.F.R. § 72.3.

Over a month before the Attorney General issued this interim rule, the district court in this case held that SORNA was retroactive as a matter of law. In doing so, the district court said, "[T]he determination of whether a law is retroactive is in the capable hands of either one of two branches of government: Congress or the courts. Congress, in stating that the Attorney General has the authority to determine how sex offenders convicted before July 27, 2006, should comply with SORNA registration, is merely giving the Attorney General an advisory role to the courts." U.S. v. Madera, 474 F.Supp. 2d 1257, 1261 (M.D. Fla. 2007). The district court concluded that because Congress did not specifically prescribe the statute's reach, and the Attorney General had not yet made a determination, the court was left to apply the normal rules of statutory

construction, "guided by the familiar [retroactivity] considerations of fair notice, reasonable reliance, and settled expectations." Id. at 262 (citing INS v. Cyr, 533 U.S. 289, 321 (2001)). The district court found that Madera was on fair notice that he had to register in Florida because of the requirement contained in the New York registration form he signed in May 2006; that "[n]o new duties were imposed on [Madera] by the enactment of SORNA;" and that SORNA did not "impair any rights [Madera] possessed when he failed to register in Florida." Id. In light of these findings, the district court concluded that SORNA was retroactive as of July 27, 2006, the day of its enactment.[3]

Madera argues that the district court erred in determining that SORNA was retroactive as a matter of law because Congress specifically delegated this decision to the Attorney General.[4] Madera argues that his prosecution under the Act was premature because the Attorney General's rule, made months after Madera's November 1, 2006 prosecution, was a "condition precedent" to SORNA's retroactive enforcement. In addition, Madera argues that the plain language of the

---

[3] When the district court initially orally denied Madera's motion to dismiss the indictment, the court ruled that SORNA was retroactive as of the day of the court's pronouncement. When the district court's written opinion was issued about a week later, however, it held that SORNA was in fact retroactive as of the day of its enactment.

[4] In making this argument, Madera does not concede that this authority was properly delegated to the Attorney General. He does not waive his later argument that this delegation exceeded Congress's authority in violation of the Non-delegation Clause.

8

"failure to register" crime set forth in 18 U.S.C. § 2250 applies only to those sex offenders who traveled in interstate commerce <u>after</u> the July 27, 2006 enactment because it uses the present sense of the verb "travels," and not the past tense. Because Madera's interstate travel occurred before the Act was enacted, he argues that § 2250 cannot be retroactively applied to him. Madera also argues that the rule of lenity, which compels strict construction of ambiguous criminal statutes so that they are applied only to conduct clearly covered, precludes the district court's ruling that the statute was retroactive.

## A. Retroactivity of SORNA

It is now clear, following the Attorney General's pronouncement of the interim rule, that SORNA is to be retroactively applied to sex offenders convicted prior to SORNA's enactment. See <u>Applicability of the Sex Offender Registration and Notification Act</u>, 72 Fed. Reg. 8894, 8896 (explaining that "[t]he current rulemaking serves the . . . immediately necessary purpose of foreclosing any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA.").

The question that remains, however, is whether SORNA may be retroactively applied to Madera who was convicted prior to SORNA's enactment and prosecuted prior to the promulgation of the Attorney General's rule. Though

9

this is the first time that a court of appeals has considered this issue, it has been raised in district courts across the country, and their decisions on the question have gone in both directions. See, e.g., United States v. Kapp, 487 F. Supp. 2d 536 (M. D. Pa. 2007) (finding that defendants indicted prior to Attorney General's promulgated rule could not be prosecuted under SORNA); United States v. Hinen, 487 F.Supp. 2d 747 (W. D. Va. 2007) (finding that defendants had duty to register under SORNA even prior to the Attorney General's rule promulgation).

This case is unique, however, because the district court decision was rendered before the Attorney General even issued the interim rule. Because the scope of the rule had not yet been clarified, the district court undertook a statutory construction analysis and declared as a matter of law that SORNA was retroactive as of the day of its enactment. By doing so, the district court erred as a matter of law.

Congress expressly reserved the retroactivity determination to be made by the Attorney General, and not by the district court. The plain language of the statute makes clear that Congress gave only the Attorney General the authority to determine SORNA's retroactivity. The statute clearly says, "The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in

10

a particular jurisdiction . . . ."  42 U.S.C. § 16913(d).  Congress's use of the word "shall" indicates that Congress was issuing a directive to the Attorney General specifically to make the determination.  See United States v. Quirante, 486 F.3d 1273, 1275 (11th Cir. 2007) (concluding that Congress's use of the word "shall" means that "[t]he one commanded must follow the command").  The district court clearly erred by usurping the role of the Attorney General in preemptively determining SORNA's retroactive application.

In so finding, we reject the Government's argument that the Attorney General was not given full discretion to determine whether SORNA would be retroactively applied to sex offenders convicted before its enactment.  We cannot agree that 42 U.S.C. § 16913(d) "addresses only those offenders unable to comply with the timing requirements for initial registration under § 16913(b)."  We recognize, as have some district courts, that "[t]here is a tension between the title of subsection (d) and its text."  United States v. Gould, 526 F. Supp. 2d 538, 543 (D. Md. 2007).  Subsection (d)'s title indicates that it applies to the "Initial registration of sex offenders unable to comply with subsection (b) of this section."  The text of subsection (d), however, provides as follows:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories

11

of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). We read the text, as did the <u>Kapp</u> court, among others, as being comprised of two clauses. The first gives the Attorney General authority to determine whether SORNA applies retroactively to all sex offenders, and the second gives the Attorney General authority to promulgate rules regarding initial registration.

Thus, we find that Congress vested the Attorney General with sole discretion to determine SORNA's retroactivity. Our reading of the statute is supported by the fact that the Attorney General in fact exercised his full discretion to determine its retroactivity when he issued the interim rule stating, "The requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R § 72.3. It is clear that this pronouncement is more than a mere regulation regarding the mechanical aspects of how previously convicted sex offenders should initially register under the statute.

Our reading is also consistent with the change in language between 42 U.S.C. § 16913(d) and SORNA's predecessor statute.[5] SORNA was preceded by

---

[5] Although the Government argues that the language in SORNA's predecessor bill supports a finding that Congress intended SORNA to apply retroactively, we find that the broader language used in SORNA actually indicates that the Attorney General was no longer

the Children's Safety Act of 2005, H.R. 3132, 109th Cong. § 113(d) (2005). It contained a comparable clause which read, "The Attorney General shall prescribe a method for the registration of sex offenders convicted before the enactment of this Act or its effective date in a particular jurisdiction." § 113(d). Given that language, the Attorney General's role was clearly "limited to specifying the manner by which past offenders could register." Kapp, 487 F. Supp. 2d at 542 n.9. Subsection (d), on the other hand, granted the Attorney General unfettered discretion to determine both how and whether SORNA was to be retroactively applied. Thus, Congress expanded the Attorney General's existing authority when it enacted SORNA.

Given our finding that the Attorney General had sole discretion to determine whether or not SORNA was to be retroactively applied to sex offenders convicted before its enactment date, it only stands to reason that SORNA's scope was undefined prior to that determination.[6] Because Madera's indictment concerns his failure to register during the gap period between SORNA's enactment and the Attorney General's retroactivity determination, he cannot be prosecuted for

---

constrained to merely promulgating regulations. Were that to remain his role, Congress would presumably have preserved the clear language (and limits) of the Children's Safety Act.

[6] We agree with Madera's argument that the rule of lenity compels this conclusion. United States v. Lanier, 520 U.S. 259, 266 (1997) (noting that the "canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it to conduct only clearly covered").

violating SORNA during that time. Thus, his indictment is due to be dismissed, and the judgment of the district court is reversed.[7]

Having decided the case on this basis, we need not reach the important constitutional questions raised in Madera's appeal. See Slack v. McDaniel, 529 U.S. 473, 485 (2000) (recognizing "[c]ourts will not pass upon a constitutional question although properly presented in the record, if there is also present some other ground upon which the case may be disposed of") (citing Ashwander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

The judgment of the district court is **REVERSED.**

---

[7] Because we grant Madera's motion to dismiss his indictment on this basis, we need not reach his statutory argument regarding Congress's use of the word "travels".