**UNITED STATES of America**

**v.**

**Christopher DEAN.**

**Case No. 2:08–CR–50–WKW [WO].**

United States District Court,
M.D. Alabama,
Northern Division.

March 6, 2009.

Jerusha Tatiana Adams, United States Attorney's Office, Montgomery, AL, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

W. KEITH WATKINS, District Judge.

On January 9, 2009, the Magistrate Judge filed a Report and Recommendation ("Recommendation") in this case. (Doc. # 29.) Defendant Christopher C. Dean ("Dean") objected to the Recommendation. (Doc. # 31.) The portions of a recommendation to which a defendant objects are reviewed *de novo.* 28 U.S.C. § 636(b)(1).

A *de novo* review of the record and law confirms that the recommendation to deny Mr. Dean's Motion to Dismiss Indictment (Doc. # 20) should be adopted.[1] Therefore, it is ORDERED that:

1. Mr. Dean's objections (Doc. # 31) are OVERRULED;

2. The Recommendation of the Magistrate Judge (Doc. # 29) that Mr. Dean's Motion to Dismiss Indictment (Doc. # 20) be denied is ADOPTED; and

1. With respect to the Recommendation's subsection on 42 U.S.C. § 16913 and the Commerce Clause of the United States Constitution (Doc. # 29, at 23–24), this discussion from *United States v. Howell*, 552 F.3d 709 (8th Cir.2009) clarifies the basis for finding § 16913 is a constitutional exercise of Congressional power:

> We believe Congress enacted SORNA to track the interstate movement of sex offenders. The language of § 16913 evidences Congress's focus on monitoring this interstate movement of sex offenders by emphasizing the movement of sex offenders from jurisdiction to jurisdiction. The statute requires sex offenders to "register, and keep the registration current, in *each jurisdiction*" where the offender lives, works, or goes to school. 42 U.S.C. § 16913(a) (emphasis added). Subsection (c) focuses on the movement of sex offenders by requiring the offenders to update registration "in at least 1 jurisdiction" within three days of a change identified in subsection (a). 42 U.S.C. § 16913(c). Finally, the statute is

concerned with interjurisdictional reporting of sex offender movement by requiring the jurisdiction where the offender updates his or her registration to notify "all other jurisdictions" where the offender must register. *Id.* This language indicates Congress wanted registration to track the movement of sex offenders through different jurisdictions.

. . .

> When § 16913 is analyzed in relation to the purpose of SORNA, it is evident § 16913 is an "appropriate aid[ ] to the accomplishment" of tracking the interstate movement of sex offenders. *See* [*United States v. Darby*, 312 U.S. 100, 121, 61 S.Ct. 451, 85 L.Ed. 609 (1941) ]. The requirements of § 16913 help establish a system by which the government can monitor the location and travels of sex offenders. Although § 16913 may reach a wholly intrastate sex offender for registry information, § 16913 is a reasonable means to track those offenders if they move across state lines. In order to monitor the interstate movement of sex offenders, the government

3. Mr. Dean's Motion to Dismiss Indictment (Doc. # 20) is DENIED.[2]

### RECOMMENDATION OF THE MAGISTRATE JUDGE

WALLACE CAPEL, JR., United States Magistrate Judge.

On 28 July 2008, Christopher C. Dean ("Dean") filed a Motion to Dismiss the indictment in this case. (Doc. # 20). Dean is charged with failing to register under the Sex Offender Registration and Notification Act (SORNA) in violation of 18 U.S.C. § 2250. The motion asserts several grounds for dismissal: (1) SORNA is not applicable to Dean because he is unable to initially register under § 16913(b); (2) the Attorney General has not promulgated regulations making the Act retroactive to persons convicted before its implementation in a particular state; (3) SORNA's provisions violate the *Ex Post Facto* Clause; (4) to punish Dean would violate the Due Process Clause; (5) Dean did not receive proper notice; (6) the unconstitutionality of SORNA as an improper delegation of legislative power by Congress to the Executive branch; (7) the improper administrative implementa-

tion of SORNA by the Department of Justice; and (8) the unconstitutionality of SORNA due to Congress's improper exercise of power under the Commerce Clause. (Doc. # 20). On 14 October 2008, the Government filed a Response. (Doc. # 25). On 13 November 2008, the District Court referred this matter to the undersigned for disposition. (Doc. # 28). For the reasons which follow, the Court concludes that the Motion to Dismiss should be DENIED.

### I. FACTUAL BACKGROUND [1]

On or about 18 January 1994, in the State of Minnesota, County of Scott, District Court for the First Judicial District (Case Number 93–12289), Dean was convicted of Criminal Sexual Conduct Third Degree. On 11 March 1994, Dean was sentenced to forty-eight (48) months of imprisonment with the Commissioner of Minnesota Corrections. Dean was released from custody for that offense on 14 September 1996. On 18 July 1996, prior to Dean's release from custody, Dean registered as a sex offender in Minnesota and signed a document acknowledging that he was subject to registration as a sex offend-

must know both where the offender has moved and where the offender originated. Without knowing an offender's initial location, there is nothing to ensure the government would know if the sex offender moved. The registration requirements are reasonably adapted to the legitimate end of regulating " 'persons or things in interstate commerce' " and " 'the use of the channels of interstate commerce.' " [*United States v. May*, 535 F.3d 912, 921 (8th Cir.2008) (quoting *United States v. Lopez*, 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995))]. Covering the registration of wholly intrastate sex offenders is merely incidental to Congress's tracking of sex offenders in interstate commerce. Therefore, § 16913 is constitutional under Congress's

authority to use the necessary and proper means to further its commerce clause power because it "is a necessary part of a more general regulation of interstate commerce." [*Gonzales v. Raich*, 545 U.S. 1, 37, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (Scalia, J., concurring)].
*Id.* at 170, 171 (first alteration in original).

2. There is nothing in the Recommendation that is contradicted by *United States v. Dumont*, 555 F.3d 1288 (11th Cir.2009); the opinions are consistent.

1. The Court adopts the Government's recitation of the factual background of this case, which was supported by documentation and unchallenged by Defendant.

er. Thereafter, Dean relocated to Montana and, on 27 March 2003, registered as a sex offender in Montana. In those registration documents, Dean acknowledged that: (1) as a convicted sex offender, he was required to register for the rest of his life; (2) if he moved to another state, he must register in that state within ten (10) days of his arrival and inform the last registering agency in Montana in writing to keep his Montana registration current; and (3) if he failed to register or to keep his registration current and accurate, he could be convicted of a separate felony offense.

At some point, Dean relocated to Georgia. On 25 October 2005, Dean registered in Georgia and provided notice to Montana of his change in residence. In his Georgia registration documents, Dean acknowledged that he understood that: (1) he must notify the sheriff of the county if he changes his residence address, employment address, vocation address, or school address; (2) if he moved to another county in Georgia, he was required, within ten (10) days of his address change, to register in person with the sheriff of the new county and the sheriff of the previous county of residence; (3) if he moved to another state, he was required to report in person to the sheriff's office in which he last registered in Georgia and the designated law enforcement agency in his new state of residence; and (4) failure to register with the sheriff, initially or annually, could result in felony conviction. On 30 May 2006, Dean updated his Georgia registration by providing a new Georgia address and employment information. On 17 July 2006, Dean updated his Minnesota registry and provided a Georgia address. In these registration documents, Dean acknowledged

that: (1) he understood that it is his duty to register as a predatory offender; (2) he understood that he must register all changes to his primary address, including moving to another state, at least five (5) days prior to moving; (3) he understood that if he moved to another state, that he must provide written notification to the registration agency in the new state; and (4) he understood that failure to comply with the registration requirements set forth in the documents could result in felony charges.

On 1 August 2007, Prattville Police Department received information that Dean, an unregistered sex offender, was living and working in Prattville, Alabama. On 6 August 2007, Dean was interviewed by law enforcement at the Prattville Police Department. After being advised of his rights, Dean waived them and agreed to be interviewed by law enforcement. In the interview, Dean admitted that he was currently living in Prattville with his sister and had been doing so for about three (3) weeks. Dean further admitted his Minnesota conviction and relocation from Minnesota to Montana to Georgia. Consequently, Dean was arrested for failure to register as a sex offender in the State of Alabama by the Prattville Police Department. On March 14, 2008, a federal grand jury returned a one-count indictment against Dean for violation of 18 U.S.C. § 2250. (Doc. # 1).

## II. STATUTORY BACKGROUND

Enacted as Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"),[2] Congress enacted SORNA to establish a comprehensive national system for the registration of sex

**2.** Pub. L. No. 109–248, §§ 1–155, 120 Stat. 587, 590–611 (2006), effective July 27, 2006.

offenders and offenders against children. 42 U.S.C. § 16901. The Act defines "sex offender" as "an individual who was convicted of a sex offense," places offenders in three tiers according to the underlying conduct of their offense (42 U.S.C. § 16911(1)-(4)), and mandates that all states and United States territories maintain a sex offender registry with specified information concerning each offender (42 U.S.C. § § 16912(a), 16914). SORNA requires each state to maintain a jurisdiction-wide sex offender registry, and directs the Attorney General to "issue guidelines and regulations to interpret and implement" its provisions. 42 U.S.C. §§ 16912(b). SORNA directs jurisdictions to completely implement SORNA before 27 July 2009, or one year from the date statutorily mandated software is available, whichever is later. 42 U.S.C. § 16924.

The substantive registration requirement in § 16913 provides "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender" resides, is employed, or is a student. 42 U.S.C. § 16913(a). Initial registration is required "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement," or "not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." 42 U.S.C. § 16913(b). Offenders must appear in person to report any changes in their registration information not later than 3 business days after each change of name, residence, employment, or student status. The jurisdiction receiving the updated information must immediately provide the information to all other jurisdictions in which the offender must register. 42 U.S.C. § 16913(c).

SORNA specifically vests in the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted *before July 27, 2006 or its implementation in a particular jurisdiction,* and to prescribe rules for the registration" of sex offenders who are unable to comply with the initial registration requirements (emphasis added). *See* 42 U.S.C. § 16913(d) (referencing 42 U.S.C. § 16913(b), applicable to offenders sentenced or released from prison after the Act's effective date). The statute sets forth the information to be collected by jurisdictions, the duration of registration for the three tiers of offenders, and the schedules for in-person verification. 42 U.S.C. §§ 16914–16916. Section 16917 imposes a duty on an "appropriate official" to notify sex offenders of registration requirements upon their release from custody or upon sentencing, and instructs the Attorney General to "prescribe rules for the notification of sex offenders who cannot register in accordance with subsection (a)." In this way, § 16917 parallels § 16913 by entrusting the Attorney General with the task of determining how to implement SORNA for previously convicted sex offenders who have completed their sentences for the SORNA-qualifying offense. States which fail to substantially implement SORNA in any fiscal year after the implementation deadline shall not receive ten percent of the federal funds which would otherwise be allocated for projects falling under the federal/state Drug Control and System Improvement Grant Program (Title 42, subchapter V, Part A). 42 U.S.C. § 16925(a).

The Attorney General met his SORNA-assigned rulemaking duties in three publications: (1) an Interim Rule on the Applicability of the SORNA, 72 Fed. Reg. 8894 (2007) (the "Interim Rule"); (2) Proposed Guidelines for SORNA, 72 Fed. Reg. 30210

(2007) (the "Proposed Guidelines"); and, (3) Final Guidelines for SORNA, 73 Fed. Reg. 38030 (2008) (the "Final Guidelines").

Finally, section 141 of SORNA amends Title 18, United States Code to create "a new federal crime for those individuals who fail to register, or to keep their registration current, despite being required to do so." *United States v. Madera*, 528 F.3d 852, 855 (11th Cir.2008). Codified at 18 U.S.C. § 2250(a), this new offense carries a penalty of up to ten years of imprisonment, and is the charge in the indictment against Dean. Section 2250(a) provides

(a) In general.—Whoever—

(1) is required to register under the Sex Offender Registration and

Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law . . . or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, . . . , and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

## III. DISCUSSION

### A. *SORNA's Application to Dean*

#### 1. *Dean's Initial Registration Requirements*

Dean argues he was unable to initially register under the plain language of section 16913(b), because SORNA requires that sex offenders initially register: "(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement[ ] or (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment," 42 U.S.C. § 16913(b), and Dean was released from prison prior to SORNA's enactment. Dean is correct. Therefore, the Court looks to § 16913(d), which governs the "[i]nitial registration of sex offenders unable to comply with subsection (b) of this section." *Id.* at § (d).

Subsection (d) of § 16913 states: "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." As the government correctly notes, the Attorney general has specified that "SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration." 72 Fed. Reg. 8895. Thus, through the authority designated by subsection (d), the Attorney General has made SORNA applicable to Dean, despite his inability to "initially register" under subsection (b).

#### 2. *Promulgated Regulations Make the Act Retroactive to Dean*

Next, Dean argues that "Congress delegated authority to the Attorney General to specify the retroactive applicability of SORNA to both (a) those who were 'con-

victed before July 27, 2006,' and (b) those who were 'convicted before ... its implementation in a particular jurisdiction,'" (Doc. # 20 at 10), and, while the "Attorney General has now issued a regulation providing that SORNA is applicable to those convicted before July 27, 2006, [he] has not issued a regulation declaring that SORNA applies to those convicted before the Act is implemented in a particular state." *Id.* Thus, Dean asserts, "no authority exists making SORNA retroactive in jurisdictions that have yet [to do] what the Act requires." *Id.*

Dean's recitation of § 16913(d) is misleading. The statute specifies that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction." 42 U.S.C. § 16913(d) (emphasis added). The Eleventh Circuit reads § 16913(d) "as being comprised of two clauses. The first gives the Attorney General authority to determine whether SORNA applies retroactively to all sex offenders, and the second gives the Attorney General authority to promulgate rules regarding initial registration." *Madera,* 528 F.3d at 857. "It is now clear, following the Attorney General's pronouncement of the interim rule, that SORNA is to be retroactively applied to sex offenders convicted prior to SORNA's enactment." *Id.* The Attorney General's regulations made the Act retroactivity applicable to *all sex* offenders and Dean's compliance does not rest on Alabama's implementation of the Act. *See* 28 C.F.R. § 72.3; *United States v. Benton,* 2008 WL 5273971, at *6 (S.D.Ohio Dec. 16,

2008) ("Despite Defendant's argument to the contrary, the Attorney General has specified that SORNA applies to sex offenders whose conviction of a sex offense predates the enactment of SORNA, regardless of whether a jurisdiction has implemented SORNA's requirements.").

### 3. The Ex Post Facto Clause

 Dean argues that subjecting him to punishment "for failing to register under SORNA—a law not yet applicable to him—would violate the *Ex Post Facto* Clause of the Constitution." (Doc. # 20 at 12). The *Ex Post Facto* Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (citations and quotations omitted); *see also* U.S. CONST. art. 1, § 9. A law is *ex post facto* if it: (1) has retroactive effect, *Weaver,* 450 U.S. at 29, 101 S.Ct. 960, and (2) "make[s] more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood,* 497 U.S. 37, 51, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). A law has retroactive effect if it "changes the legal consequences of acts completed before its effective date." *Carmell v. Texas,* 529 U.S. 513, 520, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000).

 Dean violates SORNA's criminal provision if he: (1) was required to register in some jurisdiction;[3] (2) knowingly failed to register or update a prior registration; and (3) traveled in interstate commerce. *See United States v. Utesch,* 2008

---

**3.** "[T]he first element merely identifies to whom the statute applies; it is not a triggering event ... [s]ection 2250 punishes an individual for traveling in interstate commerce

and failing to register. The statute does not punish an individual for previously being convicted of a sex crime." *United States v. May,* 535 F.3d 912, 920 (8th Cir.2008).

WL 656066, at *5–7 (E.D.Tenn. Mar. 6, 2008); *see also* 18 U.S.C.A. § 2250. This means that SORNA is not applied retroactively because it does not apply to a prior offense or conduct that occurred prior to the enactment of SORNA. Rather, SORNA "works prospectively, creating a new punishment for a new offense, i.e., failing to register as a sex offender under SORNA after July 27, 2006." *United States v. Fuller,* 2008 WL 2437869 at *7–8 (N.D.N.Y. June 13, 2008).; *see also United States v. LeTourneau,* 534 F.Supp.2d 718 (S.D.Tex., 2008). Here, Dean is required to register as a sex offender but he failed to so register when he moved from Georgia to Alabama. Dean's move from Georgia to Alabama took place in 2007, after the enactment of SORNA. This Court finds that neither SORNA nor the conduct at issue triggers the *Ex Post Facto* clause because it is not retroactive.

### 4. The Due Process Clause

■ Next, Dean argues that, because he is " 'unable' to register in a jurisdiction where the Act has yet to be implemented," to subject him to prosecution "violates the Due Process Clause's guarantee of fundamental fairness." (Doc. # 20 at 13). Dean misunderstands his obligations under SORNA. SORNA requires Dean to, "not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least [one] jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 42 U.S.C. § 16913(c). Section 16913(c) then places a requirement on that jurisdiction to "immediately provide that information to all other jurisdictions in which the offender is required to register." This requirement and the oth-

ers placed on jurisdictions by SORNA, are independent of Dean's requirements under the statute. "A state's failure to update its registration system to conform with SORNA does not alter a sex offender's independent duty to register all information that is required by then-existing state law." *United States v. Shenandoah,* 572 F.Supp.2d 566, 578 (M.D.Pa.2008).

Dean is being prosecuted because of *his* failure to register under Alabama law. *See* ALA.CODE § 15–20–23 (1975). In order to avoid prosecution under SORNA, Dean merely need comply with the requirements placed upon him by Alabama law. Dean has not suggested he was unable to register in Alabama pursuant to Alabama law. Thus, it appears Dean was able to comply with SORNA, and no due process violation has occurred.

### B. Notice

Dean argues that "SORNA and the SMART guidelines require the Government to notify offenders of SORNA requirements." (Doc. # 20 at 14). "Without this notification [ ]Dean could not knowingly fail to register ... [and][i]n the absence of the required notice, prosecuting [ ]Dean for failing to register violates his due process rights." *Id.* at 15.

■ With regard to the requirements SORNA places on the government; 42 U.S.C. § 16917 requires states to notify sex offenders and requires the Attorney General to provide notification for certain sex offenders. However, as the District Court in *United States v. David,* 2008 WL 2045830 (W.D.N.C., 2008), stated:

> [I]t is clear that [the] notification [required by § 16917] would be based on the **additional information that SORNA requires a sex offender to provide**

**when he registers and not on the fact of registration.** Thus, if these guidelines are eventually adopted, it may well be a defense to a SORNA prosecution that notice was not provided if such prosecution is based on a failure to give or provide the additional information required by SORNA. **In this case, defendant is not charged with violating any provision of SORNA that creates a new obligation on sex offenders—such as periodic reporting—but instead defendant is charged with violating those provisions for which he did have prior notice,** i.e., registering in any state wherein he resided.

*David,* 2008 WL 2045830 at *5–6 (emphasis added). Like the defendant in *David,* Dean is being prosecuted for provisions of SORNA for which he had notice, i.e., his duty to register when changing residency. Thus, because Dean is being prosecuted for his failure to register, "the additional notification requirements of SORNA are simply irrelevant to the pending charges." *Shenandoah,* 572 F.Supp.2d at 583.

Dean's Due Process argument is that he was denied Due Process because without notification he could not knowingly fail to register. A majority of Courts addressing this claim have held that a "defendant's awareness of his duty to register under state law [is] satisfactory for Due Process Clause purposes." *United States v. Cochran,* 2008 WL 2185427, *1 (E.D.Okla. May 23, 2008); *see also, Shenandoah,* 572 F.Supp.2d at 580 ("[A]n overwhelming majority of courts have held that a defendant's knowledge of his or her obligation to register as a sex offender pursuant to state law demonstrates proof of the probability that he or she had knowledge of his or her duty to register under SORNA.").

When Dean relocated to Georgia from Montana, he signed a Sex Offender Regis-

tration Notification/Requirements form. (Doc. # 25 at Exhibit 8). The form expressly notified Dean as follows: "If you **move to another state,** you are required to report in person to the sheriff's office you last registered with in the State of Georgia and to the designated law enforcement agency of residence." *Id.* (emphasis in original).

Further, Dean signed a similar form when he registered in Montana. When Dean registered in Georgia, he sent a letter to the Minnesota authorities informing them that he had again moved. In 2005, Dean received a letter from Minnesota informing him that he no longer had to register there, since he no longer lived or worked in Minnesota. However, the notice specifically warned that the Minnesota change did not change his obligation to register in other states. "Thus, when [Dean] moved to [Alabama], and failed to register, his prior knowledge of a duty to register under state law qualified as effective notice under SORNA." *United States v. Gould,* 526 F.Supp.2d 538, 544 (D.Md. 2007).

■ "Actual or constructive knowledge of a state registration requirement is sufficient to satisfy due process," *Shenandoah,* 572 F.Supp.2d 566 (quoting *United States v. Zuniga,* 2008 WL 2184118, at *15 (D.Neb. May 23, 2008)), and this Court is satisfied that, at the very least, Dean had constructive notice.

Further, this Court agrees with "[t]he majority of courts resolving this issue[,] [which] have found that notice is not required." *Gould,* 526 F.Supp.2d at 545. Dean relies on *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), for the proposition that, while ignorance of the law is not normally a defense,

"when 'wholly passive' conduct such as the 'mere failure to register' is criminalized, notice is essential." (Doc. # 20 at 15). However, the Supreme Court's holding in *Lambert* is inapplicable:

> In *Lambert*, the Court determined that a woman's conviction for failing to comply with a felon registration statute violated her due process rights because she received no prior notice of her duty to register. 355 U.S. at 229, 78 S.Ct. 240. Importantly, the Court assumed that the woman had no actual knowledge of her duty to register, and that there was no proof of a probability of such knowledge. *Id.* at 227, 229, 78 S.Ct. 240. *Lambert's* holding therefore applies when a "person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *Id.* at 228, 78 S.Ct. 240.

*Gould,* 526 F.Supp.2d at 544. As stated *supra,* Dean was aware of his duty to register, which means his failure to do so was an "active decision[ ] to evade registration requirements, rather than the type of wholly passive conduct described in *Lambert.*" *Shenandoah,* 572 F.Supp.2d at 582. Thus, notice was not required.

### C. The Non–Delegation Doctrine

■ Dean argues Congress improperly delegated to the Attorney General the "broad authority to specify SORNA's applicability to offenders convicted" before the Act's passage, implementation by states, or initial registration. (Doc. # 28 at 17). Dean acknowledges delegation to an administrative agency is permissible when Congress has "clearly delineated the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." (Doc. # 28 at 18) (quoting *Mistretta v. United States,* 488

U.S. 361, 372–73, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)). Dean argues Congress neither articulated policy on the retroactivity of SORNA nor provided guidance as to whether all individuals convicted of sex offenses prior to SORNA's enactment fell under its coverage. Additional concerns raised by Dean are whether Congress imposed a duty to register regardless of the date, nature, or sentence completion date of the offense(s).

■ Congress is permitted to entrust tasks of statutory implementation to its coordinate branches where it sets forth an "intelligible principle" as a guide to administrative agencies. *Mistretta,* 488 U.S. at 372, 109 S.Ct. 647 (quoting *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 72 L.Ed. 624 (1928)). Because "Congress simply cannot do its job absent an ability to delegate power under broad general directives," the Court "has deemed it 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Mistretta,* 488 U.S. at 372–73, 109 S.Ct. 647 (citations omitted).

SORNA instructs the Attorney General to "prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." 42 U.S.C. § 16913(d). The statutory text clearly directs the Attorney General to implement rules for those sex offenders, like Dean, who were unable register under SORNA upon sentencing for, or release from imprisonment for, a qualifying offense. 42 U.S.C. § 16913(b). This delegation of authority is, by implication, limited to the group of sex offenders who are covered by SORNA despite having been previously convicted and released from prison. The

implicit limitation on the Attorney General's discretion reflects the "boundaries" on legislative authority which Dean argues are essential for a valid delegation. Thus, while subsection (b) prescribes registration procedures for prospective application of SORNA, subsection (d) commits to the Attorney General the details of retroactive application. *See Madera*, 528 F.3d at 855–56.

In addition, the statute carries an "intelligible principle" for administrative implementation because, after limiting the subset of offenders subject to the Attorney General's discretion, it simply requires him to enact a registration scheme for those offenders. This task does not require the Attorney General to make any broad decisions not predetermined by the statute itself. Under the Attorney General's regulatory authority granted by SORNA, the universal registration of sex offenders—an intelligible principle—will be implemented.

A plain reading of SORNA shows Congress commanded "sex offenders" to "register, and keep the registration current, in each jurisdiction where the offender" resides, works, or attends school. 42 U.S.C. § 16913. The statute defines "sex offender" as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). The statute also defines "sex offense" as

(i) a criminal offense that has an element involving a sexual act or sexual contact with another;

(ii) a criminal offense that is a specified offense against a minor;

(iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18;

(iv) a military offense specified by the Secretary of Defense under section

115(a)(8)(C)(I) of Public Law 105–119 (10 U.S.C. 951 note); or

(v) an attempt or conspiracy to commit an offense described in clauses (I) through (iv).

42 U.S.C. § 16911(5)(A). The definition excludes unreliable foreign convictions, as determined by the Attorney General, and certain consensual acts if the victim was at least 13 years old and the offender was no more than four years older. 42 U.S.C. § 16911(5)(B–C).

SORNA places no temporal limitations on the conviction date for sex offenders subject to registration; therefore the court reads SORNA as applicable to all. *See Madera*, 528 F.3d at 858 (finding Attorney General used his sole discretion to apply SORNA retroactively to all sex offenders). The definitions of covered offenses are clear well-defined, and Dean does not contend that his Minnesota conviction falls under 42 U.S.C. § 16911(5)(B) (excluding certain unreliable foreign convictions to be established through rulemaking), or that the conduct was consensual and excludable under 42 U.S.C. § 16911(5)(C). Thus, the statute itself refutes Dean's arguments that the delegation is so broad as to be unconstitutional. Therefore, the Court finds that the Attorney General promulgated regulations consistent with the statute and purposes of SORNA, and Dean's claim is denied.

### E. The Administrative Procedures Act

#### 1. Standing

Before the Court addresses Defendant's claim, it will address the Government's challenge to Dean's standing to raise this claim. The Government asserts that "Dean [does] not fall into that small

category of offenders unable to register as described in Section 16913(d), and [does] not fall into the category for which the Attorney General was to promulgate registration rules." *Id.* The Government concludes that, "[b]ecause the Attorney General's Interim Rule does not apply to Dean, he lacks standing to raise this challenge. *See [United States v.] May,* 535 F.3d [912,] 921 [ (8th Cir.2008) ]." *Id.*

The Government's position is curious, considering that, when arguing SORNA applied to Dean despite Alabama's failure to implement SORNA, the Government argued that: (1) "[i]n § 16913(d), Congress delegated to the Attorney General the authority to specify the applicability of the initial registration requirements to sex offenders convicted prior to July 27, 2006, who are unable to comply with the initial registration requirements in § 16913(b);" (2) "the Attorney General of the United States issued interim regulations making the requirements of SORNA retroactive to all sex offenders;" and, (3) "[t]hus, pursuant to the plain language of the Attorney General's Interim Regulations, SORNA's registration requirements applied to Dean beginning on February 28, 2007." (Doc. # 25 at 11 & 12).

The Government's position is also flawed because it relies on and misunderstands the holding in *May.* In *May,* the defendant's "travel in interstate commerce, although occurring after SORNA's enactment, occurred before the Attorney General issued an interim ruling designating the applicability of SORNA to offenders convicted before SORNA's date of enactment." 535 F.3d at 915. The Court concluded that "[b]ecause May was not a person unable to register before SORNA's enactment and § 16913(d)'s authorizing the Attorney General to promulgate rules

regarding its applicability does not even apply to him, May lacks standing to raise this challenge." *Id.* at 920. As was stated *supra,* Dean's interstate travel occurred after SORNA was enacted and *after* the Attorney General enacted the interim rule.

Further, in finding that § 16913(d) did not apply to the defendant in *May,* the Eighth Circuit rejected the Eleventh Circuit's holding in *Madera,* a case upon which the Government relies throughout its brief, regarding the language and applicability of § 16913(d). This Court follows the Eleventh Circuit's interpretation of § 16913(d) in *Madera,* and finds that the Attorney General did make the act retroactive to Dean "when he issued the interim rule stating, 'The requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.' " *Madera,* 528 F.3d at 858 (citing 28 C.F.R § 72.3). Therefore, Dean has standing to raise this claim.

### 2. No Violation of the Administrative Procedures Act

 Dean argues the retroactive application of SORNA to all sex offenders with convictions predating the statute violates the Administrative Procedures Act (APA). 5 U.S.C. § 553. Ordinarily, the APA requires an agency to give public notice of a proposed regulation at least thirty days before its effective date and solicit comment from the public. 5 U.S.C. § 553(b)-(c). Section 553(d)(3) provides a "good cause" exception to this requirement where the agency finds such cause and explains the grounds therefore in the rule. 5 U.S.C. § 553(d)(3).

The Attorney General provided good cause for immediate implementation in accordance with section 553(d)(3). The pub-

lication of the rule was accompanied by a statement explaining

> [T]he immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements-and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required-to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

72 Fed. Reg. 39, 8894, 8896–8897 (2007). *See United States v. David,* 2008 WL 2045827 (W.D.N.C.2008).

The urgent nature of protecting the public from sex offenders supports the immediate effective date of the SORNA regulations.[4] The Attorney General's stated rationale demonstrates good cause for immediate implementation and thus complied with the APA.

### F. The Commerce Clause

Dean argues two provisions of SORNA exceed Congressional authority under the Commerce Clause.[5] He argues that neither the registration requirement in section 16913(a), nor the jurisdictional hook of interstate travel in 18 U.S.C. § 2250(a) are proper objects of Congressional power as defined in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The *Lopez* Court restated three broad categories of activity within Congress's commerce power as follows: (1) the regulation of the use of the channels of interstate commerce; (2) the regulation and protection of the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) the regulation of those activities having a substantial relation to interstate commerce. *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624.

### A. 18 U.S.C. § 2250(a)

■ Dean argues the interstate element of § 2250(a) is insufficient support

---

4. The Court notes immediate registration by offenders does not work a hardship because all states had enacted some form of sex offender registration law prior to the passage of SORNA. *See United States v. Vardaro,* 575 F.Supp.2d 1179, 1184 n. 1 (D.Mont.2008).

5. The Constitution confers upon Congress the power "[t]o regulate commerce with foreign nations, and among the several States, and with the Indian tribes." U.S. CONST. art. I, § 8, cl. 3.

for Congressional action, and thus voids its exercise of power. He concedes this section carries an interstate component—interstate travel plus failure to register or update a registration—but asserts the lack of a temporal connection to an offender's travel and failure to register is fatal.

■ SORNA is implicated only where a sex offender (1) was required to register under SORNA based upon previous conviction for a sex offense, (2) traveled in interstate commerce, and (3) knowingly failed to register or update a registration as required by SORNA. *United States v. Bonner*, 2007 WL 4372887, at *3 (S.D.Ala. 2007). Therefore, SORNA contains a jurisdictional element directly tied to interstate travel and falls under "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624. "[S]uch an express limitation evidences that Congress was acutely aware of the breadth of its power under the Commerce Clause when it enacted SORNA." *Vardaro*, 575 F.Supp.2d at 1186.

■ "Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin. In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce." *Brooks v. United States*, 267 U.S. 432, 436–37, 45 S.Ct. 345, 69 L.Ed. 699 (1925).

Further, "because Congress has established a jurisdictional predicate of interstate or foreign travel, the government need only establish a *de minimis* effect on interstate commerce," *United States v. Hinen*, 487 F.Supp.2d 747, 758 (W.D.Va. 2007), similar to what is required under the Hobbs Act.[6] *See, e.g., United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000) ("The government needs only to establish a minimal effect on interstate commerce to support a violation of the Hobbs Act."). That minimal effect is satisfied because it involves the travel of sex offenders across state lines and links the travel to a requirement of registration, within 3 business days, upon a change of name, residence, employment, or student status.[7]

Therefore, this Court joins the vast majority of District Courts and finds that § 2250(a) is not unconstitutional.

## B. 42 U.S.C. § 16913

Dean further "contends § 16913 is unconstitutional because Congress lacks the power to force citizens who have been convicted of purely local offenses under state law to register as sex offenders," and "[u]nlike § 2250(a), its requirements are not limited to only those sex offenders who travel in interstate commerce." (Doc. # 20 at 24).

■ Dean's challenge is based on the decision in *United States v. Waybright*—which analyzed and struck down § 16913

---

6. "[T]he Hobbs Act contains an explicit jurisdictional element, see 18 U.S.C. § 1951(a), while the Gun–Free School Zones Act [discussed in *Lopez* does] not." *United States v. Guerra*, 164 F.3d 1358, 1360 (11th Cir.1999).

7. This link also rebuffs Dean's assertion that § 2250(a) criminalizes the simple act of interstate travel by a sex offender, because the registration requirement is only triggered by these events.

as unconstitutional. 561 F.Supp.2d 1154, 1162–68 (D.Mont.2008). However, this Court agrees with the court in *United States v. Cardenas,* that § 16913 "does not create and impose federal criminal penalties. To the contrary, [it] sets forth the definitions and requirements of the sex registry and notification act program and mandates that states impose criminal penalties for violation of its provisions." 2007 WL 4245913, at \*12 (S.D.Fla., November 29, 2007). "Eleventh Circuit precedent holds that '[i]n determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.' " *Id.* at \*5 (citing *Anderson v. Singletary,* 111 F.3d 801, 803 (11th Cir. 1997)) (quoting *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)). "The Court, following Eleventh Circuit rules of statutory construction, consider[s] not only 'the particular statutory language' of § 16913(a) but also the design of SORNA 'as a whole' and 'its object and policy.' " *Id.* at \*7.

■ As *Waybright's* sister court, in *United States v. Vardaro,* more properly stated:

> Both provisions of 42 U.S.C. § 16913 and 18 U.S.C. § 2250 are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty.

575 F.Supp.2d at 1187. Therefore, viewing SORNA as a whole, "it is abundantly clear that the Act does not punish sex offenders for the intrastate failure to register" and "[t]he federal government gains criminal jurisdiction only when a person required to register under SORNA travels in interstate commerce." *Id.* Thus, § 16913(a) is

a proper exercise of Congress's commerce powers.

## IV. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the Motion to Dismiss the Indictment (Doc. # 20) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before 22 January 2009.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 9th day of January, 2009.